May it please the Court, Mark Friedman on behalf of Sabina Schlotzhauer. Your Honor, I am here for Ms. Schlotzhauer. Sam Kaufman is here representing Rick Schlotzhauer. What I'd ask the Court to do is I'm going to be addressing the suppression issues, and I'll take seven minutes. Mr. Kaufman will take the balance, and if there's anything left over for rebuttal. Okay. Your Honor, in the course of a criminal investigation, where do the police, law enforcement agents, police authorities end? Do the police willfully deceive innocent third parties, making them a party to the deception? One of the issues that's occurred in this case, Your Honor, is the police authorities created a ruse, a deception, in which they used a real estate agent. In the guise, acting in the guise of buyers, they searched the premises and subsequently used the evidence that was gained from that search as the basis for a later search warrant. When they got in the house, did they actually run into things? Part of the problem we face in this case is since there was never a Frank's hearing, that issue has never been fully flushed out. We said searched. I thought they just walked through. They walked through. They made numerous observations. Like a prospective buyer, they walked through. You've been to open houses before. Right. Whether or not they opened cabinets and went into rooms that were locked, we don't know. We don't know. We know what is in the evidence. Well, did they describe anything in their affidavit that disclosed that they did open closets, locked doors? I mean, looky-loo buyers often, they certainly look in closets. We know that they looked through the house pretty thoroughly because from their affidavit, they did disclose that they observed things that they subsequently say are related to... Yeah, that's not my question, though. I mean, yes, if I'm a buyer walking through a house, anything that's out in plain view or accessible to a normal walk-through buyer would include closets. You pull out drawers. You do all sorts of things. When you're walking through a house, you want to see as much as you can to see if it's got any mold or anything else. So did they describe anything in their affidavit that would suggest that they got more information than a normal walk-through buyer? I would have to say no. However, Your Honor, the issue that we would submit that is before the Court is the question of whether or not they had a legitimate right. Well, isn't that – it sounds to me like you start in any Fourth Amendment analysis with what was the expectation of privacy, right? So your client had no expectation of privacy vis-à-vis whatever a prospective buyer would see, correct? Within the scope of a buyer, but the fact that the police were acting as something other than what they were, essentially trying to create authority... But let's just say that a prospective buyer happens to be a police officer. Is there a problem? One of the things that we note is that they never disclose in this warrant that they later get that how they in fact gained this information. That wasn't the question. Yeah. I mean, what – I mean, let's just say I'm interested in buying a piece of land in Southern Oregon and I happen to be a police officer. I mean, do I have to tell the real estate agent I'm a police officer? No, not if you are a legitimate buyer. But what does it mean to be a legitimate buyer? If I'm letting the world come in and look at my property to be a prospective buyer, there's nothing in the contract that says you can show the property to any prospective buyer but not to police officers. No, absolutely not. But the difference is, Your Honor, these individuals were not there as legitimate buyers. But – so what? I mean, what is the expectation of privacy that your clients have – or your client has, rather, when they sign a contract saying you can show the property to anybody. There's no requirement that the realtors screen the prospective buyers to make sure that they aren't undercover officers. And, you know, your client happened to, at least according to the warrant, happened to leave an indicia of marijuana cultivation lying around. I mean, what's the legitimate expectation of privacy? The law says that you can't show the property to anybody. You can't show the property to anybody. The rules are not per se illegal. Absolutely. Absolutely. The fact is, however, that the case law – the cases that deal with the right, the right to police access rules, are all dealing with situations where there is no illegal activity or there's an invitation to come in. This is not that kind of a situation. This is a situation in which a realtor has basically made a party to the police misconduct. How is it misconduct if anyone – if any one of the members of the panel could go walk onto that property? What's wrong with somebody who happens to be a police officer walking onto the property, as long as they don't look at things they're not entitled to look at? I mean, there – you can't use a ruse. The cases you cite are pretty clear. You can't use a ruse to gain entry and then look at things you otherwise wouldn't be able to look at, closed containers, boxes, things like that. That's not what happened here. They did a walk-through, and during the walk-through, they saw stuff that led them to believe that there had been marijuana cultivation, and that supported probable cause for a search warrant. We would suggest here that when a seller turns over a property to a real estate agent for the purposes of a sale, it is similar to a closed container. We essentially – you're giving this property with some limitations. The limitations are legitimate buyers. No, wait a minute. Wait a minute. I have walked through houses where I have no intention of buying the house. Am I a legitimate buyer? You are a prospective buyer. I presume. No. I have no intention. I'm going – it's in the neighborhood. I just want to see what's on the market in my neighborhood. I'm not a legitimate buyer. I understand. Okay, so he knows when he puts this on the market that there will be people who come through who have no intention of buying the house. They may be looking at it for all sorts of purposes that may advance their – they may want to know what's the area like, what's on the market, so on and so forth. The one distinction in this case is that the people who came through were officers looking for evidence of criminal activity. So your position, as I understand it, is that if the police adopt the guise of a walk-through person who's looking at the property, then they are violating the Fourth Amendment, even though if they – as Judge Fogel posited, this was an off-duty policeman who actually did want to buy the property and walked through and saw signs and took action based on what he saw incidental to his legitimate activity. So where is the – where is the reasonableness inquiry? What is it founded on here? I think one of the things that we are lacking in this case are all of the facts because we did not have the evidentiary hearing. And that's why we're asking this Court for a remand, because that's just the issue in terms of what was that expectation of privacy. We don't have the information from the realtor. We don't have the information from the officers either in terms of what was said. We don't have the – we don't have the information. Kennedy. Well, wait a minute. The realtor was their agent, your client's agent. Right. But there's any – what did the realtor – you didn't need a Franks hearing to find out any information from the realtor, did you? The question would be what the realtor knew with regard to the nature of the case. Well, what did – you have no access to the realtor? As far as I know. I wasn't the trial attorney, so I can't address that. I know. But you're saying we have to have a court hearing in order to get information from the agent of the defendant. I find that a little hard to believe. I understand. As a basis for a Franks hearing. That's an inquiry that could have been made. But I still think that the focus here needs to be in terms of what was the real – what was the realistic expectation of privacy on the part of the Schlotzhauers when they allowed – when they signed a listing agreement, and then what was the – what was part of that understanding in terms of who could be allowed on the property and who couldn't be allowed on the property. Were there any constraints in the listing agreement? It's a standard – it's a standard listing agreement. Right.  Do you want to save the time for your colleague? May it please the Court. Sam Kaufman for Mr. Schlotzhauer. I would like to address the excessive punishment argument, if I could. Sure. Briefly, there is no question that a 20-year sentence in and of itself for a drug crime has been upheld by this Court. Where the issues have been related to, where the sentence has been related to, the meat of the sentence has been related to prior convictions, combinations of prior convictions, this Court has looked at it with a little more scrutiny and looked at the nature of the prior convictions. In this case, we have a – the conviction for which the 20-year sentence was imposed was a more serious offense than some of the cases dealing with the three strikes laws. We had shoplifting priors, things like that. Or we had a shoplifting that was the ultimate offense for which the 20-year sentence was triggered. This case is similar in that the prior conviction that triggered the 20-year sentence that resulted in the 10 years of that 20-year sentence was a relatively minor offense, a possession of drugs. Right. But we know from the Supreme Court that the Eighth Amendment is very difficult. Andrade would be a prime example on the three strikes law. What authority would we invoke here to find this sentence to be a violation of the Eighth Amendment? Well, Your Honor, I think that – Isn't that the basis of your claim? It is, Your Honor. And I think cases like Helm from the Supreme Court, cases relied upon by this Court in the Ramirez case, in the Gonzalez case, where the Court has struck down sentences by virtue of the – they looked at the predicates of the sentence, not just the one crime that has resulted in the harsh penalty. But I think it's appropriate to look at the predicate of the sentence. And the district court was quite clear that it was – the district court judge felt that it was fairly unconscionable. He was clear about that. But this is almost the reverse of Lockyer v. Andrade, isn't it? Because you have a more serious contemporary offense and a less serious prior. Correct. As opposed to the person stealing a pizza with two old burglary convictions. But the bar is almost impossible to get over, isn't it? I mean, post-Lockyer v. Andrade, I mean, don't you have to really show that there's no reasonable court could impose a sentence like that? Well, I don't know that it's – that that's the standard, that no reasonable court could impose it. Well, I'm paraphrasing. But, I mean, it has to shock the conscience. It has to be – there's an enormous degree of deference given to the – given to Congress. It is. And there's no question that Congress could have said that even a minor drug offense could have a very serious sentence. Where this Court has looked at it more – with more scrutiny is where you have a combination. You have predicates. And some of those predicates – the thing that triggers the bulk of the sentence are relatively minor offenses. And then the Court looks at whether that's excessive or not. And it is our position that this is akin to those cases like Ramirez where the Court has said, wait a minute, you know, this is a very long sentence based upon very minor conduct, and that's – that offends the Constitution. Okay.  Thank you. Good morning. May it please the Court. My name is Doug Fong, and I represent the United States of America in this matter. This case is a textbook example of an undercover operation that has been approved by the Supreme Court in United States v. Lewis. Lewis and this Court's opinion in Bramble certainly approve and permit agents to obtain an invitation to come onto the property. That is to obtain consent. But the invitation in that case was – the invitation in that case was to come in and buy drugs. In the case of Lewis, it was to come in and buy drugs. In Bramble, it was to buy, I think, wildlife parts. This case is even more blatant than that because the defendants are advertising this particular property for sale. But they're not advertising an invitation to come in and engage in an illegal transaction. So there is a bit of a difference there, isn't there? There's a factual distinction in that Lewis involved illegal activity. And in this case here, it involved certainly just a bona fide sale and maybe a legal sale of property. But with respect to the holding both in Lewis and Bramble, the Court focused in on, well, what are the officers doing in this particular case? And when you look at that, it really makes no difference whether the invitation for Fourth Amendment purposes is inviting it to participate in legal activity versus illegal activity. The distinction there is not so much is the activity legal or illegal, but are the officers properly on the premises, whether the premises be a residence, as in Bramble and in Lewis, and those were the defendants' own residences, as opposed – or whether it be a circumstance like this where we're not even talking about the defendant's residence. We're talking about rental property in a manner of business property that the defendants had up for sale. And so if you look at the intrusiveness in the Fourth Amendment context, really this case is much less intrusive than, say, what the agents did in Bramble and in Lewis. So if you put your house up for sale in an open house, you, in your neighborhood, you think it's okay for the police to come around and decide to walk through open houses in your neighborhood, including your house, just on the off chance they might find something that would allow them to prosecute you for some violation, maybe even like a code violation, you think that would be okay? Yes. So long as I open my house up and I'm saying, look, public, come in, citizens, normal citizens, come on in, even if I put a sign out there that says, only citizens go, suppose I even put a sign out that said, only citizens come in, police officers stay out. So your reading of the Fourth Amendment is a blanket rule that open house sales are now an invitation for law enforcement to make investigative walk-throughs? I'm not – you know, I don't know if we – I imagine you could go that far. We don't have to go that far. The question is whether that's the principle you're articulating because you read Lewis as if – As you read Lewis and Bramble and apply those principles, an open house would mean for the general public to come in and there are no restrictions on who the persons might be or what their purposes might be. Judge Fisher, as you said yourself, you've been through houses, looked at open houses, without ever intending on buying that. The defendants would say, well, shame on you, you shouldn't do that. No, they didn't say that, but they did say that. There's a difference if it's a police officer, law enforcement. But regardless – You'll get a lot farther in this argument if you let me finish. I'm sorry. You're absolutely right about that. Well, thank you. Go ahead. Regardless of what your intent is or the police officer's intent, the real issue here is whether or not there is some kind of Fourth Amendment violation of this defendant's privacy. And clearly under Lewis and Bramble, the courts have said that they're not. The defendant argues that, well, I can circumvent Lewis and Bramble by – because it was my agent that was doing it and it was my agent that gave them permission and my agent didn't have permission to show that to the police officer. But if you look at Lewis and Bramble, what the defendants are really talking about is not the extent to which the agents examined the property. There is no allegation and the facts were not in dispute. The agents did not go beyond any scope of the consent that the realtor would have let them that the realtor was not authorized to give them. Basically, the realtor unlocked the gate and said, have at it. Go ahead and examine the entire property. Could you clarify? There weren't any disputed facts as to where the officers went, correct? That's correct. And that's because, if I remember the record correctly, that's because there was a stipulation as to what the facts were? That's correct. The parties – So trial counsel did not request an evidentiary hearing to determine where the officers went on the property when they made the observations that they made, correct? That's correct. That was not in dispute at all. The Franks hearing had to do with other representations that were made when the officers applied for the search warrant, correct? That's correct. And is it fair to say, and this is my impression, but I just wanted to hear you confirm it, that there's nothing in the search warrant affidavit that is alleged to have been a misrepresentation or a material omission as to what happened during the walk-through of this particular property? That's correct. The defendants are not complaining about where the officers looked or what they looked at. They're complaining about the fact that they were police officers and they lied about their identity. But I'm focusing now on the Franks issue. Okay. The Franks issue does not concern this walk-through. Am I correct? No. It concerns omissions of purportedly exculpatory information and inclusion of misstated information with regard to another piece of property, correct? As I recall, there were three properties that the defendants had some connection to, and I thought the Franks issue didn't concern this property at all. No. Actually, the Franks – well, the Franks issue concerned representations in the search warrant affidavit. But, for instance, one of the Franks issues was, well, the officers didn't disclose in the search warrant affidavit. Oh, okay. No, but I'm not asking my question very well. Not – I mean, of course they didn't disclose that they were officers. That's why we're here. But I thought that there were no – there are no claims that the officers misrepresented where they went and what they saw on this particular walk-through. That's absolutely correct. That's what I want – that's what I was trying to clarify. Right. Okay. So the Franks issue was just the officers failed to disclose that they were acting in undercover capacity. Okay. And those – I just want to make sure that I understand where the women might be. Suppose that I'm selling my house on my own without a real estate agent or sale on my own. Okay. And the police officers come up to my door and say, I'm interested in buying your house, and they're really interested in searching my house. Yes. And I let them in to see my house. In that circumstance. Would that be a Fourth Amendment violation? That would not be a Fourth Amendment violation, Your Honor, so long as they obtained your consent properly, and that does not in their concealing their identity is not a Fourth Amendment component under those circumstances, and so long as they only examined those areas that you were willing to let them examine. And really, that's really the precise issue that was in, say, Bramble and in Lewis, except that it's a different context. Instead of you selling your house, it's wildlife parks for sale. So when they come to my door, they say, my car broke down. Can I use your phone? I'm not a good Samaritan that I am. I'm a good homeowner. I say, sure. Come on in. And lo and behold, you know, I forgot for some stupid reason that I have a marijuana plant right there. Right. I don't know the answer to that question. I mean, my guess would be that so long as it's a normal citizen and you're not, say, asserting or misrepresenting your duties and position as a government agent and your purpose as a government agent, that that might probably be okay. I imagine if- What if they just used the statement that their car broke down just to get into my house? I think that the Fourth Amendment component doesn't depend necessarily on the officer's intent. I think Wren v. United States really establishes that principle. It might be offensive conduct to us, and maybe there might come a point in time when we'd say, well, that kind of conduct is outrageous, capitalizing or exploiting a person's feelings of compassion and the good Samaritanship. But I think that might be a different principle applied as opposed to, say, whether or not the Fourth Amendment, a person's Fourth Amendment right to privacy, has been violated. As a homeowner, what's the rule I should follow? Well, in this case, I think it's- I mean, this is a homeowner. I mean, you know, people own a home. What's the principle that I should be adhering to if I want to keep my home private? Well, I imagine that- Is that what he meant? Yes. Because I know who they are? Well, for instance, in your case, I think a lot of people do this, is knock on the door, my car broke down, I'll call someone for you and proceed with it. And obviously, the advice would be proceed with caution, but that's certainly different from whether Fourth Amendment violations has occurred and certainly different from the Fourth Amendment issue in this particular case. Sometimes a lot of times it's by appointment only. That's right. Not an open house. By appointment only. So let's suppose these officers had made an appointment and misrepresented who they were and what their intent was. Actually, that's pretty much what happened in this case. There was maybe no sign that said a by appointment only, but in fact, there was a for sale sign there. The front gate was locked. The house was locked. They approached a realtor and asked about it, and the realtor invited them, well, let's come, I'll show you the property. All right. Let's suppose the by appointment only, the realtor was only authorized to show it to legitimate buyers and they had to make some, they had to put a deposit down to walk through the house. Under the Fourth Amendment. Are you saying that there is no way to control, once you open your house, the status and their intent? Yes. The police officers in a case like that, I mean, because they're still allowed to lie and conceal their identities so long as they don't misrepresent a government purpose. But particularly in this case. But they are misrepresenting a government purpose. They're misrepresenting themselves to not be government and having no intention to come in and look for evidence of wrongdoing. No, they're not. They're misrepresenting their purpose as citizens. And so in other words, they're not saying I'm a government agent, I want to come in here, you've been the victim of a bank robbery, I want to get in. What they're saying is I'm a private citizen in this circumstance and I want to get into your house. And your authority, your case authority for your sweeping proposition is Lewis? Lewis and Bramble. I mean, Bramble specifically says that officers are entitled to misrepresent their identity and purpose for this reason. And specifically what we're talking about is the misrepresentation is just to obtain consent, just to obtain that invitation. I see that my time is almost up. I don't have any other remarks unless Your Honor has any questions about other issues. Well, I just want to read one thing that Judge Kaczynski, Chief Judge Kaczynski, said in a case arising out of, I think, a Portland case, if I'm not mistaken. In any event, and I guess it's Washington, if people can't trust the representations of government officials, the phrase I'm from the government and I'm here to help will become even more terrifying. This concern is at its zenith when government officials lie in order to gain access to places and things that they would otherwise have no legal authority to reach. I think, though, that's a different context than what we're talking about here. That's, for instance, if an FBI agent came up and said, you know, I'm the FBI. We're investigating this bank robbery. We think you might have been a victim when that person really is a suspect. You're lying about your purpose as a government official as opposed to lying about, well, am I a government official or not? Lewis's or Bramble is directly on point with that. And I think the court's position is that this is a case where the defendant dared to ask the officers, are you police or accusing them of being police? And they said, no, no, no, we're not. And it was this Court that approved that circumstance. Roberts. Okay. Thank you. I just wanted to make sure the record is clear. With regard to the Franks issue, the issue that was raised with regard to the real estate had to do with the omission, not the facts. Right. So that one's clear. And as we've argued in our briefs, with regard to the necessity of the Franks hearing, there are a number of elements that the parties submitted and clearly stated in their briefs, in their motions. And those involved other properties as well as this one. Correct. Yeah. That's what I thought, that there were several complaints about the lack of a Franks hearing. The ruse was part of it. There was a misquote with regard to a ready-mix driver. There was no expert basis with regard to some CO2 tanks. And then there was a misrepresentation as well with regard to Ms. Flotsauer's criminal record. Those are the issues. But where these officers went and what they saw, that's not contested. Counsel is correct. That was stipulated. With regard to this notion, and maybe I misunderstood counsel. First of all, the cases that the government is relying upon are clearly cases, Lewis, Bramble, Garcia. Those are clearly instances where the government goes in and is investigating criminal conduct. They are either invited in, they come in. Even in Garcia, where it sort of goes to this issue, that was ultimately decided based upon a plain view doctrine, not upon the basis of permissible or impermissible ruse. I think ultimately it does come down to a question of do government agents have the right to misrepresent themselves, particularly with regard to third parties. If the government would have its way, then the only – then every single time a real estate agent is dealing with somebody in a circumstance, they say, well, what do you do? Where do you come from? Why are you here? And that seems kind of ludicrous. I mean, there's – Well, but I keep getting – where I keep getting stuck with this argument is, what is the reasonable expectation of the seller? The seller couldn't possibly expect that no off-duty police officer would be able to – would be interested in looking at the property. I mean, that – and so if an officer has a right to be there and look at things, is the only difference here that these people didn't tell the agent that they were officers? The only difference – the difference is that they were investigating. So it goes to their subjective state of mind. It's – the issue is subjective. Ultimately, the determination, the expectation of privacy is subjective. But the expectation of privacy of the property owner has – he's just assuming, he and she are assuming that people are going to be looking at their property and they're going to see whatever they see when they're walking around. And you're saying that if a person who happens to be a sworn law enforcement officer has an investigative intent and doesn't disclose that, that somehow that – that changes everything. I think it does. That's the reason why we have warrants. Thank you. All right. Thank you, Counsel. The case argued is submitted and we'll move to the next case on calendar, which is Sequina-Chalks v. Holder.
judges: Fogel, Fisher, Paez